UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-61840-CIV-MORENO/SELTZER

APEX TOXICOLOGY, LLC,

    Plaintiff,

vs.

UNITED HEALTHCARE INSURANCE COMPANY,
UNITED HEALTHCARE SERVICES, INC.,
UNITED HEALTHCARE SERVICES LLC,
J.P. MORGAN CHARE HEALTHCARE AND INSURANCE PLAN,
GENERAL ELECTRIC HEALTHCARE PLAN
RELX INC. MEDICAL PLAN,
DST SYSTEMS, INC. MEDICAL PLAN,
PEPSICO, INC. RETIREE HEALTHCARE AND GROUP INSURANCE PLAN,
WELLS FARGO & COMPANY HEALTH PLAN,
ORACLE AMERICA, INC. FLEXIBLE BENEFIT PLAN
COMMERCE BANCSHARES, INC. COMPREHENSIVE MEDICAL PLAN
JOHN R. JURGENSEN COMPANY WELFARE BENEFIT PLAN,
REINALT-THOMAS CORPORATION MEDICAL PLAN,
CRACKER BARREL OLD COUNTRY STORE, INC. HEALTH AND WELFARE PLAN,
NOVO NORDISK, INC. MEDICAL PLAN,
DEPOSITORY TRUST AND CLEARING CORPORATION MEDICAL PLAN,
BRISTOL-MYERS SQUIBB COMPANY HEALTH AND WELFARE PLAN, and
JONES LANG LASALLE MEDICAL PLAN,

    Defendants.
_____/

## REPORT & RECOMMENDATION

**THIS CAUSE** is before the Court upon the Defendants' Motion to Dismiss Plaintiff's Complaint ("Motion") [DE 38.] The Motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation. [DE 53.] Having reviewed the applicable filings and the law, the undersigned respectfully recommends that Defendants' Motion be granted and that the Complaint [DE 1] be dismissed without prejudice.

### I.     BACKGROUND

Apex is a business which performs toxicology testing on patients admitted to substance abuse treatment facilities. [Compl. ¶ 24.]  Defendants United Healthcare Insurance Company, United Healthcare Services, Inc., and United Healthcare Services, LLC (together, "United" or "United Defendants") are, together, a health insurance company. [Id. ¶ 8.] The remaining defendants (the "Plans" or "Plan Defendants," and, together with the United Defendants, "Defendants") are self-funded employee benefits programs governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. [Id. ¶¶ 9-23.]  United provides health coverage to its own policyholders.  It also serves as claims administrator and third-party administrator ("TPA") for the Plan Defendants. [Id. at 2.]

Apex is an out-of-network provider to United policyholders and to participants in the Plans (the "Participants").  Apex alleges that throughout 2015 and 2016 it performed toxicology testing on a number of these policyholders and Participants, but that United failed to reimburse it. [Id. ¶¶ 24-33.]  Instead, United reflexively denied all claims, attaching adjustment and remark codes that Apex terms "gibberish" and "arbitrary and contradictory." [Id. ¶¶ 27-34.]  Apex alleges that these codes were pretextual and that, in reality, its claims were denied because United's "SIU" had placed a "flag" on Apex's account.[1] [Id. ¶ 34.] Apex pleads fifteen specific examples of claims that were improperly denied. [Id. ¶¶ 38-52.]  Yet, it alleges the total number of such claims to be in the hundreds. [Id. ¶ 28.]  It brings claims against United and against each of the Plan Defendants for violations of ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B)

---

[1] The SIU is a unit within United responsible for investigating potentially fraudulent claims.

2

(the "ERISA claims"). [Id. ¶¶ 53-85.] It also brings state law claims for breach of contract and unjust enrichment (the "State Claims"). [Id. ¶¶ 86-94.]

## II. PROCEDURAL HISTORY

This action represents the second round of litigation between Apex and United. In August 2016, Apex sued United (but not the Plan Defendants) in a Florida (state) court, alleging only claims under Florida law. [Apex I DE 1-3.][2] United promptly removed the action to federal court on the basis of both federal question jurisdiction and diversity of citizenship. [Apex I DE 1.] Federal question jurisdiction was predicated upon ERISA preemption of Apex's state law claims; the employee welfare benefit plans covering the patients for whom Apex had performed the testing services were all governed by (and created pursuant to) ERISA. [Id.] United then moved to dismiss the Apex I complaint. [Apex I DE 6.] It argued, *inter alia*, that ERISA preempted the state law claims and, further, that Apex could not pursue federal claims for ERISA violations because it had failed to exhaust its administrative remedies prior to filing suit. [Id. at 4-13.] Apex moved for remand the action to state court, arguing, *inter alia*, that federal question jurisdiction was lacking because ERISA did not completely preempt the state law claims. [Apex I DE 7.]

In January 2017, United States District Judge Federico A. Moreno referred Apex I to United States Magistrate Judge John J. O'Sullivan with respect to any and all pretrial matters. [Apex I DE 25.] Magistrate Judge O'Sullivan prepared a Report and Recommendation ("Apex I R&R") addressing both Apex's motion for remand and United's motion to dismiss. [Apex I DE 30.] He concluded that ERISA preemption

---

[2] "Apex I DE" refers to docket entries in the initial round of litigation between Apex and United ("Apex I"), Case No. 16-62768-CIV-MORENO/O'SULLIVAN.

applied, and he therefore recommended that the motion for remand be denied and that the motion to dismiss be granted. [Id.] However, prior to a ruling from Judge Moreno on the Apex I R&R, Apex filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). [Apex I DE 31.] Apex I, therefore, was dismissed without prejudice in July 2017. [Apex I DE 32.] In September 2017, Apex filed its Complaint in this action. [DE 1.]

### III.    STANDARD OF REVIEW

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

The Court need not accept allegations as true if they are "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Id. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012).

## IV.   DISCUSSION

### A. ERISA STANDING

Defendants argue that the ERISA claims should be dismissed because Plaintiff lacks standing to allege them. [DE 38 at 7.] They note that only "participants," "beneficiaries," and "fiduciaries" may bring ERISA claims [id. (citing Cagle v. Bruner, 112 F.3d 1510, 1514 (11th Cir. 1997))], and that healthcare providers do not fall into any of those three categories [id. (citing Hobbs. v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1241 (11th Cir. 2001))]. Defendants do acknowledge that a healthcare provider may acquire ERISA standing if a participant or beneficiary assigns it the right to receive benefit payments, but they argue that Apex may not take advantage of this exception because it has not properly alleged that it received valid assignments from any of the Participants. [Id. at 7-8.] Defendants cite case law holding that to adequately plead assignment of ERISA benefits, a plaintiff must offer a copy of the assignment and/or specifically identify the language of the assignment. [Id. at 8 (citing Adventist Health Sys./Sunbelt Inc. v. Blue Cross & Blue Shield of Fla., Inc., 2009 WL 722303, at *8 (M.D. Fla. Mar. 18, 2009)); DE 52 at 7-8, citing Garden State Pain & Radiology, P.C. v. Horizon Healthcare Servs., Inc., 2016 WL 347315, at *3 (D.N.J. Jan. 28, 2016).]

Apex counters that it has pled valid assignments. [DE 42 at 4-5.] It points to allegations in its Complaint that the billing forms submitted to United contained checked boxes denoting the Participants' assignment of benefit payments to Apex and Apex's acceptance of those same assignments. [Compl. ¶¶ 25-26.]

Furthermore, Apex notes that Defendants' argument as to the inadequacy of the allegations regarding the assignments contradicts the very position taken by United in

5

the Apex I litigation. [DE 42 at 4-5.]  There, Magistrate Judge O'Sullivan concluded that the facts of the dispute warranted application of the doctrine of complete ERISA preemption. [Apex I DE 30 at 8, 20-21.]  He noted that the first element of the test governing preemption requires a showing that the plaintiff "could have brought his claim under ERISA § 502(a)(1)(B)." [Id. at 9 (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004)).]  And one component of such a showing is that the plaintiff must have standing to bring an ERISA claim. [Id. at 10 (citing Gables Ins. Recovery v. United Healthcare Ins. Co., 39 F. Supp. 3d 1377, 1384 (S.D. Fla. 2013)).]  Indeed, United had argued that the standing requirement was satisfied because "the claim forms [Apex] submitted to request benefits under the ERISA plans [demonstrate that] Apex accepted an assignment from, and sought to stand in the shoes of, its patients." [Apex I DE 6 at 6.]  Magistrate Judge O'Sullivan credited that position, observing that while the complaint "contain[ed] no allegations about an assignment of benefits by the patients/subscribers to the plaintiff . . . [the] claim forms evidence the existence of an assignment of benefits." [Apex I DE 30 at 12-13.]  Accordingly, he determined that the assignments were valid. [Id. at 14.]

Apex correctly notes that, having previously convinced a magistrate judge to recommend dismissal of Apex's state law claims on the basis of their having been preempted by ERISA (in part because documents submitted to the court by United evidenced valid assignments of benefits), Defendants now seek to dismiss the ERISA claims for failing to properly allege valid assignments of benefits. [DE 42 at 4-5.]  Apex argues that Defendants should be estopped from contending that there were no

6

assignments and, hence, that Apex lacks ERISA standing. [Id. at 6-7.] As explained below, the undersigned agrees that Defendants' position is subject to judicial estoppel.

Under the equitable doctrine of judicial estoppel, a party who "assumes a certain position in a legal proceeding, and succeeds in maintaining that position . . . may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (internal quotation marks omitted). Judicial estoppel is intended "to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 749-50 (internal quotation marks omitted).

Courts in the Eleventh Circuit employ a two-element test in applying the doctrine of judicial estoppel. The first prong of this test looks to whether "the party took an inconsistent position under oath in a separate proceeding." Slater v. United States Steel Corp., 871 F.3d 1174, 1181 (11th Cir. 2017) (en banc). The second prong asks whether the "inconsistent positions were calculated to make a mockery of the judicial system." Id. (internal quotation marks omitted). "Judicial estoppel should not be applied when the inconsistent positions were the result of inadvertence or mistake[,] because judicial estoppel looks towards cold manipulation and not an unthinking or confused blunder." Id. (internal quotation marks omitted).

In Apex I, United submitted a sworn declaration from Jane Stalinski, a United legal case information analyst ("Stalinski Declaration") [Apex I DE 1-4.][3] The Stalinski

---

[3] The Court "may take judicial notice of its own records." United States v. Rey, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987). See also Halmos v. Bombardier Aerospace, Corp., 404 F. App'x 376, 377 (11th Cir. 2010) ("A district court may take judicial notice of

7

Declaration attaches a series of claim forms submitted by Apex to United, regarding claims for toxicology testing performed on Participants in the various Plans. [Apex I DE 1-5 – DE 1-25.] It then declares that "[t]he forms have a field location (Box 13) for the provider to indicate if its patient has authorized payment of health plan benefits directly to the provider. The entry of 'Y' in Box 13 of each Claim Form printout signifies 'yes,' benefits were assigned to Apex." [Apex I DE 1-4 ¶ 9.] It further declares that "[t]he forms also include a field location (Box 27) for the provider to indicate if it accepts the assignment. The entry of 'A/ASSIGNED' in Box 27 of each Claim Form printout signifies that Apex accepted the patient's assignment." [Id. ¶ 10.]

United plainly relied upon these recitations in Apex I to support its argument that ERISA preemption applied. [Apex I DE 6 at 6; Apex I DE 18 at 12-13.] Now, given its interest in this motion in disposing of the ERISA claims, Defendants argue that Apex has not adequately pled valid assignments and that its allegations regarding the notations in Box 13 and Box 27 merely show that "Apex checked a box on its own claim form reflecting an assignment." [DE 38 at 8.] The undersigned finds that this new position is inconsistent with United's earlier position in Apex I (which was based upon sworn statements in the Stalinski Declaration). Further, the undersigned concludes that this inconsistency is deliberate and "calculated to make a mockery of the judicial system." Slater, 871 F.3d at 1181.

Defendants' only response is that the Stalinski Declaration merely summarized the contents of the claim forms without taking a position as to the validity of the

---

matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion.").

8

assignments evidenced within them. [DE 52 at 10.] The undersigned is not persuaded. Given the purpose for which the Stalinski Declaration was proffered -- to evidence valid assignments of benefits – Defendants' response serves only to further convince the undersigned that their inconsistency results from "cold manipulation and not an unthinking or confused blunder." Slater, 871 F.3d at 1181. Indeed, in its opposition to the Apex I motion to remand, United clearly stated that the "[Stalinski] Declaration identifies . . . Apex's receipt of assignments of benefits . . . [which are] precisely the kind of evidence the Eleventh Circuit [has] deemed sufficient to establish a medical provider's standing for complete preemption purposes." [Apex I DE 18 at 12.] And in its Apex I motion to dismiss, United, citing the Stalinski Declaration and its exhibits, argued that "Apex accepted an assignment from, and sought to stand in the shoes of, its patients . . . [which] equipped Apex with derivative standing under ERISA." [Apex I DE 6 at 6.]

Accordingly, the undersigned concludes that Defendants[4] are judicially estopped from arguing that there were no valid assignments of benefits from the Participants to Apex or that Apex lacks ERISA standing.

### B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants argue that the ERISA claims should be dismissed because Apex fails to properly allege that it exhausted its available administrative remedies prior to filing this lawsuit. [DE 38 at 10-15.] "The law is clear . . . that plaintiffs in ERISA actions must

---

[4] United was the claims administrator and third-party administrator ("TPA") for the Defendant health plans [DE 1]. At all material times, therefore, United was acting as the agent for the Defendant health plans. Accordingly, the judicial estoppel is binding on all Defendants. See Baloco v. Drummond Company, Inc., 767 F.3d 1229, 1245 (11th Cir. 2014) (plaintiff children judicially estopped by declarations made by maternal parent in prior litigation).

exhaust available administrative remedies before suing in federal court." Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1328 (11th Cir. 2006) (internal quotation marks omitted). "This exhaustion requirement applies equally to claims for benefits and claims for violation of ERISA itself." Id. A district court, however, does possess "sound discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate . . . or where a claimant is denied meaningful access to the administrative review scheme in place." Id. (internal quotation marks omitted). Whether or not to excuse a failure to exhaust is a "highly discretionary" decision. Id.

Apex contends that any failure on its part to exhaust administrative remedies should be excused. It notes that the benefit denial explanations it received from United "did not contain any indication of appellate rights available to Apex." [DE 42 at 10.] Further, Apex alleges that, as a practical matter, no appellate avenue existed because the United claims handlers who would have conducted any appellate review were not empowered to overrule the SIU. [Id. at 10-11.] For these reasons, Apex argues that it should be deemed to have exhausted its administrative remedies pursuant to 29 C.F.R. § 2560.503-1(l). That regulation provides:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l).

10

Defendants respond that § 2560.503-1(l) does not excuse the failure to exhaust administrative remedies in the face of a health plan's merely technical noncompliance with ERISA notice requirements. [DE 52 at 4-6.] They cite authority holding that employees "should not be able to avoid the exhaustion requirement where technical deficiencies in an ERISA claims procedure do not hinder effective administrative review of their claims." Perrino v. S. Bell Tel. & Tel. Co., 209 F.3d 1309, 1318 (11th Cir. 2000). As the Eleventh Circuit explained in Perrino, "[that] approach conforms with the logic of our exhaustion doctrine in which we apply the exhaustion requirement ***strictly*** and recognize ***narrow*** exceptions only based on ***exceptional circumstances***." Id. (emphasis added). Accordingly, the law is clear that "if a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit." Id. That controlling Eleventh Circuit authority is consistent with the plain text of § 2560.503-1(l), which excuses a failure to exhaust only in the absence of "a reasonable claims procedure that would yield a decision on the merits of the claim."

> Apex contends that it:
>
> [E]xhausted its administrative remedies by appealing the denials of each of these claims directly to the persons responsible for the denial (and United Healthcare's counsel) and receiving a denial of the appeals or United HealthCare's failure to respond. Alternatively, exhaustion is futile because United Healthcare's internal appeals staff do not have permission to overrule the determination made by the SIU department to deny, pend, and flag claims.

[Compl. ¶ 37.] That paragraph and a separate passing reference to a letter sent to United's counsel [id. ¶ 3] constitute the sum total of Apex's allegations as to its efforts to exhaust administrative remedies. The undersigned, however, considers such a

11

perfunctory, conclusory pleading insufficient to allege exhaustion. Apex does not describe the appellate procedures for any of the plans nor does it identify any of the steps it took to comply with those procedures. Nor does it give any reason, beyond a threadbare assertion, to believe that exhaustion would have been futile. See Bickely v. Caremark RX, Inc., 461 F.3d 1325, 1330 (11th Cir. 2006) (claim of futility was speculative where plaintiff did not pursue administrative remedies and district court did not abuse discretion in failing to apply the futility exception); Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc., 57 F.3d 1040, 1042 (11th Cir. 1995) (affirming dismissal of ERISA claim where plaintiff "neither pleaded nor recited facts showing that it had exhausted its administrative remedies under the plan"); Urology Ctr. of Ga., LLC v. Blue Cross Blue Shield Health Plan of Ga., Inc., 2010 WL 797204, at *3-4 (M.D. Ga. Mar. 4, 2010) (Dismissal warranted where "[t]he Complaint fail[ed] to show that [plaintiff] made more than a cursory attempt to address its dispute through an administrative process."). Furthermore, the Eleventh Circuit has expressly held that "the futility exception is about meaningful access to administrative proceedings, not a potential conflict of interest of the decisionmakers." Lanfear v. Home Depot, Inc., 536 F.3d 1217, 1225 (11th Cir. 2008) (citing Springer v. Wal-Mart Associates' Group Health Plan, 980 F.2d 897 (11th Cir. 1990)). Thus, the undersigned concludes that the threadbare allegations of futility in Plaintiff's Complaint do not support application of the futility exception.

The failure to sufficiently plead exhaustion of administrative remedies, or sufficient grounds for applying the futility exception, is fatal to Apex's ERISA claims. Apex, however, should be permitted to cure this deficiency by amending its Complaint

to specifically allege the appellate procedures available under each of the Plans and the steps it took to comply with those procedures or, alternatively, the precise reasons why exhaustion would have been futile.

### C. FAILURE TO STATE A CLAIM FOR BENEFITS

Defendants argue that the Complaint must be dismissed because Apex fails to adequately allege it is due benefits under the Plans. Specifically, Defendants argue that Apex is required to plead facts showing that there are benefits due to them under the terms of the relevant plans but have failed to make the requisite allegations. See Sanctuary Surgical Center, Inc. v. Aetna, Inc., 546 Fed. App'x 846 (11th Cir. 2013) (holding that healthcare provider failed to state a claim under § 502(a)(1)(B) by not pleading "specific facts creating a plausible inference that the [§ 502(a)(1)(B) procedures] were medically necessary, and thus covered benefits, for each patient in question"). Apex responds that Sanctuary Surgical Center is not applicable because United did not deny the claims for lack of coverage or medical necessity, but rather based the denials "on a series of alleged misrepresented adjudication codes" by United's SIU. The undersigned does not agree.

The Complaint seeks the payment of benefits for toxicology services provided to Apex's patients. Although the Complaint does allege that Apex provided toxicology services to Defendants' subscribers [DE 1, ¶ 24], it fails to allege any facts that would show that the toxicology services were covered under each plan and payable for each participant. Without establishing a right to coverage for the services rendered to each participant, Apex cannot lawfully contest United's denial of payment. "The law is clear that 'benefits payable under an ERISA plan are limited to the benefits specified in the

13

plan.' As a result, '[a] plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question.' . . . 'In addition, to state a plausible ERISA claim, the complaint must provide the court with enough factual information to determine whether the [services] were indeed covered services under the plan.'" <u>Living Tree Laboratories, LLC v. United Healthcare Services, Inc.</u>, Case No. 16-cv-24680 (S.D. Fla. Mar. 29, 2018) (Gayles, D.J.) (internal quotations omitted). Plaintiff's Complaint fails to do this. Accordingly, the undersigned recommends that Apex's Complaint be dismissed for failure to state a claim for unpaid benefits. Apex should be permitted to cure this deficiency by amending its Complaint to specifically allege the existence of coverage for each of the unpaid claims.

### D. CLAIMS AGAINST THE PLANS

Defendants argue that the Complaint must be dismissed because Apex does not allege that the Plans have decision-making authority over the payment or denial of benefits. To the contrary, the Complaint alleges that United administered the Plans. "The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." <u>Garren v. John Hancock Mut. Life Ins. Co.</u>, 114 F.3d 186, 187 (11th Cir. 1997). Apex counters that the Summary Plan Descriptions (which are not attached to the Complaint) for each of the Plans identifies the Plan Defendants as Plan Administrators that retain discretionary control over the plans. However, with only two exceptions, the Complaint fails to allege that the Plan Administrators retained discretionary authority to interpret the plans.[5] The undersigned,

---

[5] The Complaint alleges that RELX, Inc. is the Plan Sponsor and Plan Administrator of the Defendant RELX, Inc. Medical Plan, and that RELX, Inc. retained discretionary authority to interpret the plan [DE 1, ¶ 11]. The Complaint also alleges that DST

14

therefore, concurs with Defendants and concludes that Apex has not alleged that the Plan Defendants are proper parties. For this reason, the undersigned recommends that the claims against the Defendants be dismissed without prejudice, with leave to amend.

### E.  STATUTE OF LIMITATIONS

Plan Defendants RELX Inc. Medical Plan and Wells Fargo & Company Health Plan argue that the Complaint should be dismissed as to them because Plaintiff's claims for benefits are barred by those Plans' contractual statute of limitations provisions. "A statute of limitations bar is an affirmative defense, and ... plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (quotation omitted). Unless it is apparent from the face of the complaint that the plaintiff's claims are time-barred, dismissal on a Rule 12(b)(6) motion for a statute of limitations defense is not permissible. Id. The undersigned cannot determine from the Complaint whether Plaintiff's claims are time-barred. Accordingly, a dismissal at this stage on grounds of a statute of limitations violation would be premature.

### F.  IMPROPER JOINDER

Defendants argue that dismissal is warranted because Apex has improperly joined United, the Plan Defendants, the fully-insured ERISA Plans insured by United, and the fully-insured non-ERISA Plans. Apex counters that joinder is appropriate because United administers all of the plans and all of the claims are for services provided by Apex. "Rule 20(a)(2) provides for permissive joinder of defendants when

---

Systems, Inc. is the Plan Sponsor and Administrator of Defendant DST Systems, Inc. Medical Plan and that DST Systems, Inc. retained discretionary authority to interpret the plan [DE 1, ¶ 12]. The Complaint makes no similar allegations concerning the remaining Plan Defendants.

15

two requirements are met:  (1) there must be some question of law or fact common to all parties which will arise in the action, and (2) there must be some right to relief asserted on behalf of each of the plaintiffs, and against each of the defendants, relating to, or arising out of, a single transaction or occurrence or a series of transactions or occurrences." Sanctuary Surgical Centre, Inc. v. United Healthcare, Inc., 2011 WL 2134534, at *4 (S.D. Fla. May 27, 2011) ( Hurley, D.J).  "Rule 20 refers to the same transaction or occurrence not to similar transactions or occurrences." Id. (citing Hartley v. Clark, 2010 WL 1187880 at *3 (N.D. Fla. Feb. 12, 2010)); Fed. R. Civ. P. 20(a)(2)(A) and (B).

In this case, the common factor is Defendant United Healthcare, whose alleged decision to flag claims submitted by Apex for review by its SIU has led to non- or under-payment of those claims by the various Plan Defendants.  Apex argues that the similarity of United's treatment of the claims supports joinder of all of the Plan Defendants.  However, as discussed supra, Apex's Complaint fails to allege the bases for its claims for benefits under the various plans.  Without more, it is premature to determine whether the claims raised by Apex against the various Plan Defendants refer to the same or to similar transactions or occurrences.  Accordingly, the undersigned recommends evaluating the propriety of the joinder after Apex has amended its Complaint.

### G. STATE LAW CLAIMS

In addition to the ERISA claims, Apex also brings the State Claims for breach of contract and unjust enrichment.  [DE 1 ¶¶ 86-94.]  The asserted grounds for the Court's

subject matter jurisdiction over the State Claims is its supplemental jurisdiction pursuant 28 U.S.C. § 1367.  [Compl. ¶ 4.]

"[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."  <u>Bochese v. Town of Ponce Inlet</u>, 405 F.3d 964, 975 (11th Cir. 2005).  It should do so "at the earliest possible stage in the proceedings."  <u>Univ. of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405, 410 (11th Cir. 1999). Once a federal court determines that it is without subject matter jurisdiction, "the court is powerless to continue."  <u>Bochese</u>, 405 F.3d at 975-75; <u>see also</u> Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").  Because Apex's federal claims warrant dismissal,  no basis exists for the Court to continue to exercise supplemental jurisdiction over the State Claims.  Accordingly, the claims for breach of contract and unjust enrichment should be dismissed without prejudice.

### <u>V.</u>    <u>CONCLUSION</u>

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the Motion [DE 38] be **GRANTED** and that the Complaint be **DISMISSED without prejudice** for:  (1) failing to plead exhaustion of remedies or sufficient grounds for applying the futility exception; (2) failing to state a claim for unpaid benefits; and (3) failing to allege that the Plan Administrators retained discretionary authority to interpret

the plans; and, as a result, (4) for lack of supplemental jurisdiction over the breach of contract and unjust enrichment claims.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers, Fort Lauderdale, Florida, this 23rd day of April 2018.

BARRY S. SELTZER
United States Magistrate Judge

Copies provided via CM/ECF to:

Hon. Federico A. Moreno
All counsel of record