UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
**Case Number: 17-61840-CIV-MORENO**

APEX TOXICOLOGY, LLC,

       Plaintiff,

vs.

UNITED HEALTHCARE INSURANCE COMPANY; UNITED HEALTHCARE SERVICES, INC.; UNITED HEALTHCARE SERVICE LLC; JPMORGAN CHASE HEALTH CARE AND INSURANCE PLAN; GENERAL ELECTRIC HEALTH CARE PLAN; RELX, INC. MEDICAL PLAN; DST SYSTEMS, INC. MEDICAL PLAN; PEPSICO, INC. RETIREE HEALTH CARE AND GROUP INSURANCE PLAN; WELLS FARGO & COMPANY HEALTH PLAN; ORACLE AMERICAN, INC. FLEXIBLE BENEFIT PLAN; COMMERCE BANCSHARES, INC. COMPREHENSIVE MEDICAL PLAN; REINALT-THOMAS CORPORATION MEDICAL PLAN; CRACKER BARREL OLD COUNTRY STORE, INC. HEALTH AND WELFARE PLAN; NOVO NORDISK, INC. MEDICAL PLAN; DEPOSITORY TRUST AND CLEARING CORPORATION MEDICAL PLAN; BRISTOL-MYERS SQUIBB COMPANY HEALTH AND WELFARE PLAN; and JONES LANG LASALLE MEDICAL PLAN,

       Defendants.
_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, IN PART, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

THE MATTER was referred to the Honorable Barry S. Seltzer, United States Magistrate Judge, for a Report and Recommendation on Defendant's Motion to Dismiss Plaintiff's Complaint, filed on **November 17, 2017**. The Magistrate Judge filed a Report and

Recommendation (**D.E. 38**) on <u>**April 23, 2018**</u>. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, it is

**ADJUDGED** that United States Magistrate Judge Barry S. Seltzer's Report and Recommendation is **AFFIRMED** and **ADOPTED, in part.** The Report recommends that Defendants be judicially estopped from attacking Apex's ERISA standing because of the seemingly inconsistent position Defendants took in *Apex Toxicology, LLC v. United Healthcare Ins. Co.*, Case No. 16-62768-CIV-MORENO (S.D. Fla.) ("Apex I"). Defendants object to this recommendation on two grounds: (1) judicial estoppel does not apply, and (2) the Report and Recommendation conflates two different standards for ERISA standing. This Court agrees, and Defendants' objections to the Report's recommendation that judicial estoppel be applied are **sustained**.

### 1. <u>Judicial Estoppel</u>

Under the doctrine of judicial estoppel, a party "who assumes a certain position in a legal proceeding, and succeeds in maintaining that position . . . may not thereafter, simply because his interests have changed, assume a contrary position, specifically if it be to the prejudice of the party who has acquiesced in the positions formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The Eleventh Circuit employs a two-prong test in applying the doctrine: (1) whether "the party took an inconsistent position under oath in a separate proceeding"; and (2) whether the "inconsistent positions were calculated to make a mockery of the judicial system." *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017). These factors, however, "are flexible and not exhaustive, and courts should always consider the individual

circumstances of a given case." *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1245 (11th Cir. 2014) (internal citations omitted). Applying these guidelines, Magistrate Judge Seltzer found that because United submitted a sworn declaration from Jane Stalinski in Apex I to demonstrate, what he characterized as, "valid" assignments of benefits on the claim forms[1], and because Defendants now use the same declaration to argue that the claim forms merely show that "Apex checked a box on its own claim form reflecting assignment," prong one is satisfied. With respect to prong two, given Defendants' contention that the Stalinski Declaration merely summarized the contents of the claim form, but did not take a position as to the validity of the assignments, Judge Seltzer was convinced that the inconsistency in Apex I and II results from "cold manipulation and not an unthinking or confused blunder." *Slater*, 871 F.3d at 1181.

Defendants object to this recommendation, arguing that in Apex I United never claimed that the assignments were valid and that Magistrate Judge Seltzer used "unduly strong language to characterize United's arguments in Apex I and II." (D.E. 57, at 7.) Defendants contend that United's arguments in Apex I and II arose in different contexts, and therefore the arguments were based on the different standards applied to standing—in Apex I, United was attempting to assert a "colorable" claim for purposes of establishing preemption and subject-matter jurisdiction, and in Apex II, United is attempting to demonstrate that Apex lacks *valid* standing.[2] As such, "any perceived inconsistency arose from United's understanding of the applicable law and procedural context, and not from any intent to make a mockery of the judicial system or mislead the court." (D.E. 57, at 11.)

---

[1] Ms. Stalinski's declaration states that "[t]he forms have a field location (Box 13) for the provider to indicate if its patient has authorized payment of health plan benefits directly to the provider. The entry of 'Y' in Box 13 of each Claim Form printout signifies 'yes,' benefits were assigned to Apex." It further declares that "[t]he forms also include a field location (Box 27) for the provider to indicate if it accepts the assignment. The entry of 'A/ASSIGNED' in Box 27 of each Claim Form printout signifies that Apex accepted the patient's assignment."

[2] Discussed at length below in Section 2: "Colorable Claim vs. Valid Claim."

3

Moreover, Defendants argue that putting the nuances of the different standards aside, the prongs for judicial estoppel have not been satisfied. With respect to prong one, Defendants argue that Magistrate Judge Seltzer erred in relying on Ms. Stalinski's declaration to satisfy the requirement that the party must have taken inconsistent positions for two reasons. First, United relied on Ms. Stalinski's testimony in both Apex I and Apex II as evidence that the claim forms demonstrate alleged assignments of benefits (in Apex I to demonstrate plausibility of standing; in Apex II to refute the validity of the assignment). Second, "judicial estoppel is inappropriate unless the earlier position was accepted by a court or agency." *Montrose Med. Grp. Participating Savings Plan v. Bulger*, 243 F.3d 773, 782 (3d Cir. 2001) (citing other circuits with the same holding including the Eleventh Circuit). Because in Apex I this Court never adopted Magistrate Judge O'Sullivan's Report and Recommendation, United was *technically* never successful in persuading this Court to accept its earlier position. And as such, with respect to prong two, United did not make a mockery of the judicial system.

Relying on the Eleventh Circuit's recent opinion on judicial estoppel in *Slater v. U.S. Steel Corp.*, this Court finds, as discussed further below, that Defendants are correct in noting that there are different standards applied in determining standing versus determining success. Case No. 12-15548, 2018 WL 2924969 (11th Cir. June 12, 2018) (finding that the district court abused its discretion in applying the doctrine of judicial estoppel). For that reason, this Court declines to find that Defendants intended to "make a mockery of the judicial system" and will not foreclose them from arguing the merits of Apex's ERISA standing by imposing the doctrine of judicial estoppel.

### 2. Colorable Claim vs. Valid Claim

Defendants object to Magistrate Judge Seltzer's recommendation of judicial estoppel on

4

the grounds that he "erroneously conflated the standard for complete preemption with the requirement that a plaintiff must adequately plead an ERISA claim once it actually brings one." (D.E. 57, at 8.) Although at first blush it would appear that Defendants are taking inconsistent positions in Apex I and II, Defendants correctly point out that there is a difference between a *colorable* claim and a *valid* claim.

In *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1346, 1351 n.3 (11th Cir. 1998), the Eleventh Circuit set out a four-part test for complete preemption under ERISA: (1) a relevant ERISA plan; (2) *the plaintiff has standing to sue under the plan*; (3) the defendant must be an ERISA entity; and (4) the plaintiff must seek relief available under ERISA. In Apex I, United argued for, and Magistrate Judge O'Sullivan found, complete preemption of Apex's claims under ERISA and subject-matter jurisdiction. Because the second prong of the preemption test requires that a plaintiff have standing to sue under the plan and because Judge O'Sullivan found all of the prongs to be satisfied, Apex argues that Defendants should not now be allowed to rely on the plans' anti-assignment provisions to attack standing on a motion to dismiss. Apex contends that Eleventh Circuit law teaches that "a defendant cannot remove a case to federal court on the basis that ERISA completely preempts the action and provides federal jurisdiction based on assignments, and subsequently move to dismiss on the basis that the assignments were always invalid to begin with, which from the start would have failed the complete preemption test and negated federal jurisdiction." (D.E. 68, at 9). But Apex misinterprets the law.

Apex misguidedly relies on *Butero, In re Managed Care Litig.*, 298 F. Supp. 2d 1298, 1291 (S.D. Fla. 2003), and *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, 1243 (11th Cir. 2001) to support its position. While *Butero* sets forth the four-part test required for complete preemption under § 1132(a), it does not, as Apex would have this Court believe,

5

analyze or otherwise discuss the issue of standing before this Court today. Likewise, in *In re Managed Care Litig.*, the test for preemption is set forth, but there is no relevant discussion of standing. In *Hobbs*, however, the court does discuss standing and the analysis cuts against Apex's proposition, which is that the court held that the defendant failed to demonstrate in the notice of removal that plaintiffs had received assignments of benefits to confer ERISA standing. But this is irrelevant and misleading. Apex fails to note that in *Hobbs* the Eleventh Circuit also held that to confer a district court with subject-matter jurisdiction the party seeking to do so must demonstrate that the purported assignee of benefits has "plausible" and/or "likely" derivative standing to bring an action under ERISA. The Court does not in *Hobbs*—or any other case cited by Apex—forthrightly state that satisfying the requirements for complete preemption under ERISA means that standing cannot then be attacked on a motion to dismiss.

To that point, Defendants cite *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, which states: "as the Seventh Circuit observed in *Kennedy v. Connecticut Life Insurance Co.*, 924 F.2d 698 (7th Cir. 1991), cited with approval [by the Eleventh Circuit] in [*Cagle v. Bruner*, 112 F.3d 1510, 1514 (11th Cir. 1997)], all one needs for standing under ERISA is a <u>colorable</u> claim for benefits . . ." 591 F.3d 1337, 1353 (11th Cir. 2009) (emphasis added). Just because a case states a claim that sounds in federal law under ERISA (as United argued in Apex I and as Apex argues in its Apex II complaint), does not necessarily mean that the claim is valid. And just because the Apex I Report and Recommendation found the assignments of benefits adequate to support a colorable ERISA claim, does not mean that it should be conflated with a dispositive ruling on the merits of any factual or legal issues. Indeed, parties often argue that a plaintiff's pleadings establish complete preemption, and then at a later stage of the proceeding challenge the sufficiency of the plaintiff's allegations. For example, in *Univ. of Wisconsin*

6

*Hospitals & Clinics Auth. v. Aetna Health & Life Ins. Co.*, 144 F. Supp. 3d 1048, (W.D. Wis. 2015), like here, the defendant removed the case from state court on the basis of complete ERISA preemption and then moved to dismiss on the basis of anti-assignment clauses.[3] There was no waiver caused by prevailing on a complete preemption argument, and then later seeking dismissal for lack of standing based on anti-assignment provisions. The same is true here.

Furthermore, the Eleventh Circuit in *Cagle* specifically noted that "an assignee of ERISA-covered medical benefits has derivative standing to bring an action under § 1132(a) against an ERISA plan, *if the plan does not forbid assignments of benefits.*" *Cagle*, 112 F.3d at 1515 (citations omitted) (emphasis added). Here, Defendants seek to argue that a majority of the assignments are invalid based on anti-assignment provisions. Apex argues that Magistrate Judge Seltzer's Report and Recommendation "did not . . . recommend that Defendants be judicially estopped from presenting any defenses to the assignments, including . . . the existence of an anti-assignment provision." (D.E. 68, at 10-11.) But Apex is wrong. The Apex II Report and Recommendation explicitly states that Defendants should be "judicially estopped from arguing that there were no valid assignments of benefits from the Participants to Apex or that Apex lacks ERISA standing." Judge Seltzer was specific and deliberate in recommending that Defendants not be allowed to attack the validity of the assignments. Contrary to what Apex suggests, to forbid an attack on the validity of the assignments would be to forbid Defendants from raising the anti-assignment clauses. For this reason, Defendants shall not be estopped from attacking the validity of Apex's ERISA standing.

### 3. <u>Exhaustion of Administrative Remedies</u>

The Court understands that Plaintiff is required to exhaust administrative remedies before

---

[3] *See also Cohen v. Horizon Blue Cross Blue Shield of NJ*, No. 15-4252, 2017 WL 685101, at *4 & n.5 (D.N.J. Feb. 21, 2017); *Ephrem v. Standard Ins. Co.*, No. 13-cv-00866, 2013 WL 6780772, at *6-7 (D. Or. Dec. 19, 2013); *Specialty Surgery of Middletown v. Aetna*, No. 12-4429, 2014 WL 2861311, at *3-5 (D.N.J. June 24, 2014).

7

bringing this claim to Court, unless doing so would be futile. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223-24 (11th Cir. 2008) (internal quotations and citations omitted) ("The law is clear in [the Eleventh Circuit] that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court. . .[however,] district courts have discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate."). The Court will therefore adopt Magistrate Judge Seltzer's recommendation, and allow Plaintiff to amend its complaint to "specifically allege the appellate procedures available under each of the Plans and the steps it took to comply with those procedures or, alternatively, the precise reasons why exhaustion would be futile." (D.E. 56, at 13.) Defendants may move separately for dismissal on this basis. Accordingly, it is

**ADJUDGED** as follows:

(1) The Amended Complaint must be filed no later than **July 13, 2018**.

(2) A motion to dismiss for failure to exhaust administrative remedies may be filed no later than **July 20, 2018**.

(3) A response to the motion to dismiss must be filed no later than **August 6, 2018**.

(4) A reply to the response to the motion to dismiss must filed no later than **August 13, 2018**.

This Court will rule on that motion to dismiss once the motion has been fully briefed without the need to refer that specific motion to Magistrate Judge Seltzer.

DONE AND ORDERED in Chambers at Miami, Florida, this ___29th___ of June 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
United States Magistrate Judge Barry S. Seltzer
Counsel of Record